UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MCMAHAN HOLDINGS, LLC, and
MCMAHAN GROUP, LLC,                                                              Plaintiffs,

v.                                                                         Civil Action No. 3:13-cv-1141-DJH

TIRE DISCOUNTERS, INC.,                                                          Defendant.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Plaintiffs McMahan Holdings, LLC and McMahan Group, LLC (collectively "McMahan") claim that Defendant Tire Discounters, Inc. breached the parties' two build-to-suit leases when Tire Discounters failed to timely provide construction plans. McMahan also seeks declaratory judgment that its rejection of construction plans was reasonable under the leases. Tire Discounters counterclaims that McMahan anticipatorily repudiated the leases when McMahan refused to construct—at McMahan's sole cost—prototypical Tire Discounters buildings. Partial summary judgment is appropriate because the leases do not permit McMahan to reject construction plans for cost alone and do not require Tire Discounters to submit plans within a certain timeframe. But because genuine disputes of material fact exist, summary judgment is inappropriate on all other issues.

**I.      FACTUAL BACKGROUND**

Under two February 2013 lease agreements, McMahan agreed to lease two undeveloped sites in Louisville, Kentucky to Tire Discounters. (D.N. 28-7, 28-8) The sites are identified as "Plaza" and "Brownsboro Road." McMahan also assumed the costs of building two prototypical

1

Tire Discounters stores on the properties. (*Id.* PageID # 1440, 1492) The parties agreed that Tire Discounters would hire an architect to produce preliminary construction plans for the buildings within 45 days of execution of the leases. (*Id.*) After receiving the plans, McMahan had to approve, suggest revisions, or disapprove of them within 30 days. (*Id.*) Following preliminary approval, the leases required Tire Discounters to submit completed construction plans for approval. (*Id.*) The leases did not, however, give a deadline for submitting either plan. The parties dispute whether Tire Discounters delivered satisfactory preliminary and completed plans.

In August 2013 Turner Construction, the project's contractor, delivered a guaranteed maximum price proposal ("GMP") to McMahan. The GMP capped construction costs at $794,124, which McMahan claims was a significant increase over the costs discussed during negotiations. (D.N. 28-9) And so McMahan's general counsel, David Joule, sent Tire Discounters a letter (the "Joule Letter") regarding the GMP. (D.N. 28-11) The Joule Letter listed McMahan's objections to the costs and said that the issue would need to be addressed before plan approval. (*Id.*) McMahan argues that this letter adequately notified Tire Discounters that McMahan was rejecting the building plans based on costs. But Tire Discounters asserts that McMahan could not reject construction plans for cost alone and says the Joule Letter was an anticipatory repudiation of the leases.

McMahan sued in November 2013. It seeks a declaratory judgment that it reasonably refused to approve the plans because of increased costs and that Tire Discounters' failure to deliver plans within 45 days from execution breached the agreements. (D.N. 1, PageID # 5)

2

McMahan amended its complaint to clarify that it also seeks a judgment that Tire Discounters breached the leases by failing to submit preliminary or complete construction plans or by refusing to revise such plans when McMahan reasonably rejected them. (D.N. 19, PageID # 312-13)

Tire Discounters seeks summary judgment on its counterclaims and a judgment that, because of McMahan's repudiation or breach, (1) specific performance was appropriate but is now impossible; (2) it is entitled to self-perform McMahan's construction obligations and offset the costs against rent; and (3) it is entitled to lost profits as damages from McMahan's breach. Tire Discounters also wants a hearing on damages if its summary judgment motion is granted. Tire Discounters argues that it performed its obligations under the leases until it received the Joule Letter. It asserts that the Joule Letter was an anticipatory repudiation of the leases, which excused Tire Discounters from any future breach. (D.N. 21, PageID # 427; D.N. 6)

Conversely, McMahan seeks summary judgment on both its declaratory judgment and breach of contract claims and on all of Tire Discounters' counterclaims. McMahan also requests a damages hearing if its motion is granted. McMahan argues that its refusal to approve plans was reasonable under the leases and was not an anticipatory repudiation. And it argues that it was excused from its construction obligations because Tire Discounters failed to timely submit building plans—a condition precedent to McMahan's performance.

## II.     STANDARD

To grant summary judgment, this Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant satisfies this burden, the non-movant must show specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must review the evidence in the light most favorable to the non-movant, the non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The non-movant must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex*, 477 U.S. at 322–23. The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient. Instead, there must be evidence upon which a jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 252.

### III.   DISCUSSION

While the parties have filed competing motions for summary judgment on several claims, their dispute centers on whether the leases allow McMahan to reject construction plans for cost alone—a question of contract interpretation. In Kentucky, contract interpretation is a question of law for the Court to decide. *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky. Ct. App. 1998). For the reasons described below, the Court concludes that the leases do not allow McMahan to reject

plans because of construction costs alone. And the leases do not require Tire Discounters to submit plans within a certain period of time. Accordingly, summary judgment in Tire Discounters's favor is appropriate on McMahan's claims. But summary judgment on Tire Discounters' claims is inappropriate because the remaining issues—whether McMahan anticipatorily repudiated the agreements and whether Tire Discounters met conditions precedent to McMahan's performance—rest on genuine disputes of material fact.

### A. McMahan Cannot Reject on Cost Alone

The Court must interpret the terms of a contract. "Certainly, the construction and interpretation of a written instrument is a question of law for the [C]ourt." *Cinelli,* 997 S.W.2d at 476. Ordinarily, only the four corners of the agreement are examined. *Smith v. Crimson Ridge Dev., LLC*, 410 S.W.3d 619, 621 (Ky. Ct. App. 2013) (citing *Baker v. Coombs,* 219 S.W.3d 204, 207 (Ky. Ct. App. 2007)). Any unambiguous contractual terms are given their ordinary meaning, "without resort to extrinsic evidence." *Id*. (quoting *Frear v. P.T.A. Indus., Inc.,* 103 S.W.3d 99, 106 (Ky. 2003)).

If a contract is ambiguous, Kentucky law requires courts to construe the ambiguity against the drafting party. *Primary Care Med. Ctr. v. Peerless Indemnity Ins. Co.*, 780 F. Supp. 2d 555, 558 (W.D. Ky. 2011) (citing *Perry v. Perry*, 143 S.W. 3d 632, 633 (Ky. Ct. App. 2004). Even if a contract contains an integration or merger clause, a court may still turn to parol evidence in some instances, like if a party alleges fraud or mistake. *Pannell v. Shannon*, 425 S.W. 3d 58, 66-67 (Ky. 2014). And, of course, even where there is such a clause, courts may

5

still "look to extrinsic evidence where an ambiguity exists in a contract." *See McMullin v. McMullin*, 338 S.W.3d 315, 321 (Ky. Ct. App. 2011).

These are integrated leases "contain[ing] the entire Agreement of the parties . . . and no representations, warranties, inducements, promises, or agreements . . . not embodied in [the leases] shall be of any force or effect." (D.N. 28-7 PageID # 1461; D.N. 28-8 PageID # 1513) The parties spent substantial time arguing about the contents of their negotiations. Yet McMahan has not alleged fraud or mistake in this matter. And the leases are unambiguous on this question. Therefore, the Court will ignore the negotiations and consider only the unambiguous terms of the leases.

The leases allow McMahan to reject construction plans within thirty days of receiving them. (D.N. 28-7 PageID # 1440; D.N. 28-8, PageID # 1492) While the leases prevent this rejection from being unreasonably withheld, conditioned, or delayed, they do not explicitly give McMahan the right to reject the plans because of cost. (*Id.*) In fact, the leases require McMahan to construct the buildings "at its sole cost and expense." (*Id.* PageID # 1441, 1492) Furthermore, the contract only specifies that the buildings be an approximately 7,918 square foot "prototypical" Tire Discounters building.[1] (*Id.* PageID # 1434, 1487) There are no caps or other restrictions on construction costs. Tellingly, the leases do include caps on Tire Discounters' share of operating expenses. (*Id.* PageID # 1443, 1496) The parties apparently knew how to

---

[1] Although the leases attach conceptual drawings of the building, the drawings are not comprehensive and do not appear to provide any details related to cost. (D.N. 28-7 Ex. F; D.N. 28-8 Ex. F)

6

limit the amount of acceptable construction costs. They chose not to detail these limits in their lease agreements.[2]

Examining the four corners of the agreements, the Court finds that the leases do not provide McMahan with rejection rights based solely on construction costs. Even if the leases were ambiguous on this issue, the Court would construe that ambiguity against McMahan because it drafted the agreements. (*See* D.N. 31, PageID # 1654) Therefore, the Court grants partial summary judgment on this issue.

### B. Tire Discounters Did Not Breach the Leases by Untimely Submitting Construction Plans

McMahan claims that Tire Discounters breached the agreements by failing to timely submit construction plans in accordance with § 5 of the leases. However, neither that provision nor any other provides deadlines for Tire Discounters to submit plans. Rather, § 5 requires Tire Discounters to "engage an architect to prepare preliminary plans" within 45 days of execution. (D.N. 28-7 PageID # 1440; D.N. 28-8, PageID # 1492)

The only timelines in the leases for plan preparation include restrictions on the time after submission for McMahan to approve or reject the plans. (*Id.*) McMahan argues that the leases cannot be read in this manner because it would allow Tire Discounters to freely impose upon McMahan's property in perpetuity. (D.N. 28-2 PageID # 1285) McMahan contends, therefore, that the deadline for submission of complete plans must be the dates when McMahan was contractually required to commence construction. (*Id.*) Yet the contracts contemplate a delay in

---

[2] Notably, McMahan was permitted to—but chose not to—seek lower bids from contractors other than Turner Construction. The leases only required Tire Discounters to approve, in writing, another contractor. (D.N. 28-7 PageID # 1440; D.N. 28-8 PageID # 1492)

submission of plans by extending the date that McMahan would have to commence construction. The leases state that the construction deadline is extended for "delays due to the actions of [Tire Discounters]." (D.N. 28-7 PageID # 1441; D.N. 28-8, PageID # 1493)  If construction is delayed for over 480 days, then Tire Discounters—but not McMahan—is able to terminate the leases. (*Id.*)

Thus, there was no specific deadline for Tire Discounters to provide McMahan with construction plans.  Accordingly, Tire Discounters did not breach the agreements by failing to timely provide McMahan with construction plans.

### C. Whether McMahan Anticipatorily Repudiated the Leases Is a Genuine Dispute of Material Fact

Tire Discounters claims that McMahan anticipatorily repudiated the agreements when McMahan sent the Joule Letter in August 2013.  In the Joule Letter, McMahan told Tire Discounters that the parties were at an "impasse" and that "the sizeable increase in the building costs compared with what was discussed during negotiations is a problem that needs to be addressed before we can approve of the plans and proceed with construction." (D.N. 28-11) McMahan asserts that this letter was an attempt to work with Tire Discounters to revise the plans and lower costs before construction. (D.N. 28-2 PageID # 1293)  McMahan contends the letter exercised rights granted by the leases to reject the submitted construction plans.  (*Id.*) Conversely, Tire Discounters considers this letter a repudiation of the agreements between the parties because McMahan did not have the right to reject plans for costs alone.  (D.N. 25-1 PageID # 1209)

8

Unlike issues of contract interpretation, "whether a contract has been anticipatorily repudiated is a question of fact." *Upton v. Ginn*, 231 S.W. 3d 788, 791 (Ky. Ct. App. 2007). In Kentucky, an anticipatory repudiation must be "absolute or unequivocal." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599 (6th Cir. 2004); *Paducah Cooperage Co. v. Ark. Stove Co.*, 237 S.W. 412, 413 (Ky. 1922) ("it is a universal rule that renunciation must be clear and unmistakable").

A reasonable jury could conclude that the Joule Letter was not an absolute or unequivocal repudiation of the agreements. The statement that cost "is a problem that needs to be addressed before we can approve of the plans and proceed with construction" could reasonably be interpreted as an attempt to discuss mutually acceptable ways to decrease costs while preserving the agreements between the parties. Accordingly, the Court denies Tire Discounters' request for summary judgment that McMahan anticipatorily repudiated the leases.

### D. There is a Genuine Dispute of Material Fact Regarding Whether Tire Discounters Provided McMahan with Appropriate Plans

Tire Discounters claims that McMahan's failure to timely construct prototypical stores breached the leases. Pursuant to the leases, however, it is Tire Discounters's responsibility to give McMahan completed plans before McMahan must construct the buildings. (D.N. 28-7 PageID # 1440; D.N. 28-8, PageID # 1492) Although Tire Discounters was not required to submit plans according to a particular timetable, the delivery of these plans is a condition precedent to McMahan's performance. Therefore, if Tire Discounters never gave McMahan proper construction plans, Tire Discounters cannot complain about McMahan's failure to perform. *Breckinridge Cty. v. Beard*, 27 S.W. 2d 427, 429 (Ky. 1930); *Jewell v. Blandford*, 37 Ky. 472, 478 (Ky. 1838).

Tire Discounters has some evidence that it delivered completed construction plans for one of the two lease sites. However, this evidence is not compelling. Tire Discounters cites a Turner Construction e-mail stating that plans would be sent to McMahan on a disk in August 2013. (D.N. 24-31) Paul Brunner, the CEO of Tire Discounters, also stated that he believes complete plans were provided to McMahan during the summer of 2013. (D.N. 25-2 PageID # 1225) The best piece of evidence that McMahan was sent complete plans of the Plaza site is the Joule Letter. The Joule Letter refers to the approval of "plans and specifications" pursuant to § 5 of the lease and states that "[t]he GMP submitted by Turner was our first opportunity to review such plans." (D.N. 24-11) Nevertheless, Rory McMahan testified in his deposition that the plans were sent to other entities and that McMahan did not receive a complete set of the plans until after the commencement of this lawsuit. (D.N. 24 PageID # 626) The limited amount of evidence presented on this issue creates a genuine dispute of material fact as to whether McMahan received complete plans for the building at the Plaza site. Therefore, summary judgment on Tire Discounters's breach of contract claim for McMahan's failure to construct the proposed building at the Plaza site is denied.

Tire Discounters concedes that it never completed construction plans for the other site, Brownsboro Road, contending that McMahan repudiated the leases before it could complete the plans. (D.N. 25-1 PageID # 1209) Because the Court denies summary judgment on Tire Discounters's anticipatory repudiation claim, Tire Discounters's claim that McMahan breached the lease of the Brownsboro Road site for failure to commence construction is also denied.

## IV.   CONCLUSION

For the forgoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that McMahan's motion for summary judgment (D.N. 28) is **DENIED**. Tire Discounters's motion for summary judgment (D.N. 25) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Because the leases do not require the delivery of construction plans within a certain period of time, Tire Discounters's motion for summary judgment on McMahan's breach of contract claim is **GRANTED**.

(2) Because the leases do not permit McMahan to reject construction plans based on cost alone, Tire Discounters's motion for summary judgment on McMahan's claim for declaratory judgment is **GRANTED**.

(3) Because there are genuine disputes of material fact as to whether Tire Discounters delivered complete construction plans and whether McMahan anticipatorily repudiated the leases, Tire Discounters's request for summary judgment on its counterclaims is **DENIED**.